Our first case, Farring Pharmaceuticals vs. Watson Pharmaceuticals. Good afternoon. If it pleases the court, I am Arnie Olson, arguing on behalf of Farring Pharmaceuticals, with me is my associate, Brian Mahalik. I think what we need to look at is... Counsel, if you don't mind my interrupting, sorry, are you reserving any time? I'm sorry, yes. I would like to reserve three minutes, if I may. Okay, that's granted. Thank you. I think we have to look at the situation of the history of what happened here. Prior to eBay, there was, all across this country, a presumption of irreparable harm when you were dealing with such rights as reputation or goodwill in a trademark or a landmark or a false advertising sense. And I submit that eBay did not change that. eBay said, flat out, we hold only that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that discretion must be exercised consistent with traditional principles of equity. And what I'm saying is, before eBay, there were traditional principles of equity being exercised. An entire brand of case law had developed as to when you applied the irreparable harm standard or it was presumed in a trademark and false advertising case. But didn't eBay, I mean, didn't the Supreme Court and eBay show some disdain for automatic rules like presumptions of irreparable harm? What eBay and Winter did, in my mind, was they showed disdain for going off the beam. You have the traditional principles of equity in the center, and you had the Federal Circuit putting an automatic injunction on a patent, and you had the Ninth Circuit saying a possibility of success was enough for a preliminary injunction. What eBay did was to put everybody back on the beam, and I submit that the traditional principles of equity provided for where there is reputation involved, where there's a First Amendment right involved, where there is goodwill involved, you see that there is harm, and harm here is an equitable issue that you cannot put a value on it. You cannot put a monetary value on what the harm to your reputation is. But wasn't the focus on making sure there were facts to support it, and not just a presumption that it existed under the traditional principles of equity? You still had to show facts for each of the four factors, correct? You had to show the facts for the four factors for the likelihood of success in particular, as to how it was a false statement and such. And by the way, in this case, we had two, admittedly, two of the three statements were admitted by the defendant to be false. So I think we have, therefore, a showing of a likelihood of success on those two factors. But on the likelihood, on the presumption, I think the presumption is tied to the reputation issue, where somebody says your product is dangerous, or your product is not liked, or your product is ineffective. This is all moving fast. As soon as this hits, you are drafting up your papers to get into court as fast as you can. You don't have time to go running around and say, oh, did you not buy this product because of what you just heard? Or did you not prescribe this product because of what you just heard? Well, I mean, but, well, I mean, in the normal course, you'll, as Judge Schwartz just said, you would come up with proof. You'd try to prove that. Why should we recognize a presumption in this particular case? Because, once again, I say that because it does go to reputation. And reputation and harm and the value of a good name, you cannot put a dollar value on it, number one. So you're drawing a distinction now between this area of trademark law and patent and copyright law. Absolutely. Why? Because there's that reputation. Because in patent and copyright, it's a property right that's been infringed on. You can get out the calculator and figure out what a reasonable royalty is and write a check. If I say nasty things about you and what your abilities are as someone cutting grass, as opposed to being a judge, you know, what does that harm? How does that harm your reputation? How can we put a value on it? But more importantly, in this case, we had actual evidence in the record of harm, how it would cause harm. Well, that's a different issue, isn't it? You're talking about presumptions and the proof. So let's keep them separate. Okay. But that evidence was never considered by the district court. It wasn't considered at all by the district court? At all. Well, is it? Are you talking about the declaration of the doctor who said, if I heard this, I may have acted differently? If I heard this, I would have acted differently and people in my profession would have acted differently. You have to keep in mind that the fertility market, there's only a few hundred doctors in the entire country that specialize in this area. So, you know, when you hit even what seems like a small number, that's a large percentage that you're hitting. I mean, even hitting the office manager, she's the gatekeeper. You can't get past her. You're not getting to talk to a doctor. But under these circumstances, this particular declaration only says it may have affected her had she heard it. But the record is there's no longer any kind of sharing of the same message. According to the record, the webcast isn't up anymore. No. All due respect, Your Honor. No, they are doing webcasts. As a matter of fact, the declaration is- Beg your pardon? I didn't hear you. All due respect, Your Honor, they are doing webcasts. And the record shows from the declaration, I believe- The webcast is still ongoing. So you're saying the district court made a mistake when it says there was no longer a webcast occurring? That's correct, Your Honor. Can you tell me where in the record that is, please? The Cochran declaration in there says that for future webcasts, we are not going to have-we're going to change this for the future webcasts. But here's the particular problem is we have requested a discovery that's been ordered to be turned over to us. They refuse to turn over to us any webcasts other than the ones we already have. So I think we have to assume that there's something in there because they won't give it to us. Well, we can't do that. We have to assume. We're only deciding this case based on the record and whether or not the district judge abused his discretion. And so, wait just one sec. And you're saying that the record-that he was incorrect on the record in front of him, that the webcast continued, and you point us to the Cochran declaration? Absolutely. That is based on a very lawyered-up declaration by Dr. Silverberg when he says, I will not say, and in quotes, this particular statement. That goes to the black box and only the black box. And the Cochran declaration that they submitted, she said, oh, we're going to-for future webcasts, we're going to be changing what the project-you know, what's on the PowerPoint. So I take that as meaning that they're continuing to use that PowerPoint. In other words, it's not comparative, what's on the PowerPoint. Oh, the PowerPoint is absolutely comparative. The PowerPoint, Your Honor, is- Well, but they're saying it won't be anymore, right? There is- No, no, they will say it will be. They will say specifically that it is. But their figures will change then, right? No, sir. Okay. No, that's the whole problem. But the other biggest problem is they say there's a survey. No survey has been produced. They are running around this country saying, we have a survey that shows this. They don't have a survey. We've never seen a survey. No survey even to this date has been produced. I- How much discovery was there? Prior to this- Yes. Very little. We asked for expedited discovery from the magistrate judge, and we were only granted a very limited amount. It was very restrictive. It's in the record. Yeah. Is there anything more? Well, in particular, the other biggest problem that we have in this situation was that there were three separate things we were complaining about. And those were all glommed together with an erroneous statement that somehow- Because we had to show that they were completely unsubstantiated. I want to point out that the law here is that if it's completely unsubstantiated, it's an automatic per se rule. If there is substantiation, then the court has to look at what the evidence is. The court never took that second step. Your criticism is that the judge treated all three of the- All three together. The black box, the comparison, and the age issue in one and should have separately looked at each. For example, I don't know what his reasoning was, but, for example, his reasoning might have been, well, they do have some numbers there. Maybe they're the wrong numbers or something. So, therefore, it was conflated to cover everything. And that's the problem here is that he said, well, there's something there, and, therefore, we should lose. Well, no, you then go to the next step because nobody debates that these are establishment. This is an establishment case. Nobody debates that. As a matter of fact, not even Watson has come to the support of the judge's view about completely substantiating their brief. If you read their brief, they don't even defend his position on that. I see that I've almost got to my three minutes. No, you have three more minutes. Oh, I'm sorry. The yellow light means you've got to start thinking about ending. Thank you, Your Honor. Okay, sure. And when the red light comes, a big trap door opens, and you go down to 19 floors. I will not say which Court of Appeals it is in this country, but there is one of them that you better cut it off at mid-word. So what's your position on the Ninth Circuit case that you both addressed in the 20HA letter, the Herb Reid case? The problem with the Ninth Circuit case is that I call it the legal game of telephone. They took a piece from here and a piece from there and a piece from there. I asked this Court to go back and actually look at exactly what eBay says, which is we hold only that you are to go to the traditional principles of equity. And then you look at that, and you read the two concurrences at seven of the judges, and they say, look at history. Basically, they say, we're not here to undo history. We're not changing history. Basically, both Winter and eBay got off the beam. Get back on the beam. Let's look at the history. What have we done? An entire chunk of the case law is here. And as I said, we also submitted evidence of where the judge, Dr. Beltz, said she would do this, other people in the profession would do this, if given this information, would not prescribe. Likely not prescribe, I should say. You also provided in the record, I think it came from your side, a note from an alleged note from a sales representative. Right. And that note has the letters PI, which I understood to be product insert. Yes. Is that what you understood it to be? Yes. Okay. The only difference between those words and the product insert, meaning the words on the note, is the word clearly is absent. So how does this advance your position? If I might, it won't speak that out. It says it has not been established. Right. And the product insert says not clearly established. I just want to make it clear. The product insert is required to say that by the FDA based on the tests that were available at the time it was approved. Ms. Corky, you've got to keep in mind, changing a label on a product insert is a very long and expensive process. I believe the application fee to the FDA alone is over a million dollars. But my question to you is how does the note from the watch and sales record. Because the note says it's not been established, and the evidence that's in this record by those scientific studies that were in the record that Dr. Silverberg misquoted and says it doesn't work for women over 35, those studies that are submitted in the record that he turned on its head show that it is used for women over 35, and it has been effective for women over 35. This says the efficacy has not been established for women over 35. That's not true. As of the time of this note, it's not true. What the FDA required back in 2008 is something else. Okay. I see a red light is on. We'll hear from you on rebuttal. Thank you very much. Thank you. Your Honor, can I please have the Court? My name is David W. Phillips from McLaren on behalf of the Apple E. Watson Pharmaceuticals, now known as Activist, Inc. Your Honor, I'll start with the legal issue here, which is the presumption of irreparable harm. What about eBay? I take it you don't agree with your friend. I don't agree with his presentation of eBay. eBay, I think, is fairly clear. The Court in eBay quite clearly said that the plaintiff must prove the four elements of injunctive relief. Now, the one thing you have to keep in mind is that this was a patent case. The plaintiff had already established liability, so like the presumption in the Lanham Act cases, liability had already been established. The patent case law uses that establishment of liability and presumes the ability to get an injunction. eBay said, no, you can't. You have to show irreparable harm. It was a unanimous decision, Your Honors, a unanimous decision that a plaintiff must show all four factors in order to get injunctive relief. It didn't say you could presume one factor. And, assumably, if you can presume one factor, you can presume two or three. And Winter is even clearer. Winter says, our frequently reiterated standard requires plaintiffs seeking preliminary injunctions to demonstrate that irreparable harm is likely in the absence of an injunction. Future irreparable harm. The plaintiff must show the future irreparable harm. You can't shift the burden to the defendant. I don't think that language is reconcilable with a presumption anymore. And I think that that's what Herb Reid said. There can't be a presumption. Your adversary seems to be focusing on the fact that there's many years of case law talking about the existence of the presumption, and I think he's trying to link that to some of the language in the concurrences that talk about you can't ignore history. And so he's trying to say that history makes a tradition, that is the equity tradition of four factors and the irreparable harm component. How do we ignore the historical tendency? Well, two things, Your Honor. First of all, those statements were in the concurrences, and those justices had already voted for the unanimous opinion as well. The statute, the patent law, says that the court can use equity, or the court can issue injunctions in accordance with equity. The majority opinion, the unanimous opinion, says that in order to issue an injunction, the plaintiff must show all four factors of injunctive relief. So by that, the Supreme Court is saying that in order to get an injunction under the law, you have to show all four prongs. You can't presume one prong. I frankly, I've read the concurrence opinion several times. I don't understand where they're going with that. I don't understand to say that you can presume one factor when the majority opinion says you can't. Winter, which came several years later, is even clearer. Your adversary also pointed out that this particular area of law, that being Lanham Act, ought to be distinguished from patent and copyright. How do you feel about that distinction? I think that the first level of that is you look at the statutes and compare the statutes, and both statutes have almost the exact same language in granting the right to the court to apply injunctive relief. So if under the Patent Act, you have to apply the four standards, and the same language is in the Lanham Act, then I think you still have to apply the four standards. But I think his argument is substantively, maybe I don't have it right, but under copyright and patent law, there's actually an ownership right. Under the Lanham Act, not the same. That's true, and I think what we point out in our brief is that the language of the granting of a remedy is different from the granting of a right. The patent law grants the right. The Lanham Act grants the right. The remedy is the injunctive relief, and that's the ability to stop someone from doing something, and you have to show irreparable harm. And I think if you look at this case, if you look at what's not in the record in this case, you'll see that this is a prime example for why you can't presume irreparable harm. Contrary to what the appellant says, there is no evidence in the record of any irreparable harm. Novartis, which has been thrown about here several times, sets out a manner in which to prove irreparable harm, because in Novartis, irreparable harm was shown. The district court found irreparable harm, and the circuit court found irreparable harm. And that shows you can show irreparable harm. You can show lost sales. You can show reputation. You can show loss of control. There was no evidence submitted here of any of that. There was no evidence of one single sale submitted by Farring. There was no evidence that it has a reputation. In fact, Your Honors, this application was so deficient, there was no evidence that endometrin is sold in commerce. It's not even alleged in the complaint. We don't deny it, but they didn't bother to bring that in on their application for injunction. So what's happened here is they had no evidence, they came in with no evidence of any harm at all, and they relied on the presumption. Well, they take a different position. They say that Judge Kavanaugh basically blew it. There was evidence, and he gave it the backhand. How do you feel about that? You heard what he said. The only thing I submitted was the declaration of Dr. Beltzos. Right. And if you read that declaration, it doesn't read as a statement brief. It doesn't read it as Mr. Olson stated here. She stated, I may alter my prescribing decisions based upon what I heard. She doesn't say I would. She doesn't say it's likely. And then she goes on to say, I think that other doctors would likely change their prescribing methods. But she doesn't explain what the basis of that is. She doesn't explain that she's spoken to other doctors. She has no survey. There's no basis for an opinion that other doctors would change their prescribing habits. In every instance, she said, I may do this, I may do this, I may do this. It's a 50-50. It's not a likelihood of irreparable harm. It's not a likelihood of injury for the likelihood of success problem either, which was not proved. Did this report seem to rely on representations that there was a voluntary cessation of these statements at issue? Well, it wasn't a representation, Your Honor. It was a statement under oath by Dr. Silverberg. You're disagreeing with this, pointing the court now to the Corcoran Declaration saying that this webcast is still available. Is he accurate? He's not. That webcast is not available. What he is saying is that there may be other webcasts that Watson Pharmaceuticals is conducting, and that's probably true. They probably have other webcasts and other marketing efforts. Dr. Silverberg made two misstatements in those webcasts. He never did them before. They were off script. They were not part of what Watson gave him to say. He said he will never do that again. There is no indication that any other speaker for Watson has ever said those words or would ever say them again. They were not suggested to him. There's no indication that they were suggested to him. There's nothing. And on the issue of discovery, they were granted the deposition of Dr. Silverberg on an expedited basis and chose not to do it. And how does the representation that Dr. Silverberg won't make the statement binding on Watson when Silverberg is a consultant? I mean, was that you intending the district court to rely on that as if Watson was also saying we too will not make those statements? Well, Watson, it's a fine line here because Watson never gave him those statements. He was a consultant. He worked off a PowerPoint that had been prepared by Watson. That PowerPoint did not contain those statements. He was off script. He was our consultant. He was working for us. He did it on our behalf. But he was bumped back on the tracks at the 9 o'clock show, right? With the one statement, yes. They didn't catch the other one. The black box statement. That's right. Don't do that. Don't say that. He didn't. He's promised under oath to never say them again. We have no indication that any other speaker has ever said those statements. So there's no chance that they're going to happen in the future that we're aware of. They could have taken his deposition and he could have said, you know, it's in my head, stuck in my head, I'm going to say that every chance I get. But they didn't. He said under oath, I will not say them. So there's no chance of future statements of that sort. What about the survey? Now, your adversary pointed out the survey that has not been turned over, that's supportive of some of the statistics. The survey is in the record, Your Honor. What's not in the record are the materials behind the survey, the questions and everything else behind the survey. Right. We haven't located those yet. That was done by an independent company when this drug was owned by a different company. We will continue to try to locate them. But I would submit that's no different than the other studies that Farron relies upon and that Watson relies upon. We don't have the underlying data for those studies either. We don't have the medical records of the people in those studies. We don't have the blood tests, the findings. But that doesn't make them any less valid. We have the results, and we have the results of that survey. And based upon all that, Your Honor, I would submit that Judge Kavanaugh should be affirmed. Okay. Judge Elster, do you have any other questions? No, we don't have a question. Okay. Thank you, Your Honor. Thank you, counsel. We'll hear your rebuttal. First of all, I apologize. I misspoke. The declaration is of that of Ms. Amato, and in particular, in the record, Not Cochran. Amato, you're saying? Amato, yes. Okay. In particular, at page 303A, she states, The webcast now has a correct slide stating that the survey was of women who had used both crinone and endometrine. So to me, that means they're still using it in webcasts. They're still presenting it. As I said, they refuse to produce this in discovery. We don't know the answer. So any representations as to what's being done now, we don't know. As far as – But is that enough for us to – I mean, the extraordinary remedy of injunctive relief? Well, it certainly goes – I think at a minimum, you need to send it back to the district court and say, Hey, sort out. Are they still doing this? Well, couldn't you do that anyway? If you've gotten new evidence, you could reapply for injunction, right? You'd have a new record. You'd go back to the district judge. I've already been before the magistrate judge. I have an order now. I'm not getting it. I'm going to have to go back again, okay? I mean, that's the point. They're making representations. It's not good, but they're withholding it from me. I have a problem with that concept. Now, he pointed out the language of an injunction is the same in patent and trademark cases. Yes, it says you apply the principles of equity in determining an injunction. How else does a court grant an injunction? It is your power as a chancellor. Of course the language is going to be the same. It's also written on paper. But there are other – there's other statutes that permit injunctive relief to be granted where the four-factor test doesn't apply to labor context, for example. So that statute has meaning, and the language in it is – that's what the Supreme Court says you should do. Go to the history. As far as irreparable harm, the Seventh Circuit just last year in the Kraft case, we cite in the brief, granted an injunction, preliminary injunction, never dealt with the presumption, basically says no, because it's a trademark, because people – the public is getting confused. You have to protect the rights there. You cannot put a dollar value on it. It's like what we had with the Supreme Court that we cited in the Elrod case. The Elrod case flat-out says if you're violating a First Amendment, there's irreparable harm. That's not even a presumption. So my opposing counsel has gotten up here and argued that somehow eBay destroys any ability of a presumption and basically says you must put in evidence of harm. No, definitely for First Amendment cases, Supreme Court's made it clear you don't. If you step on the First Amendment, and this Third Circuit has also stated, that in and of itself is considered the harm. As far as taking the deposition of Dr. Silverberg, no, I did not, because the magistrate judge discouraged it greatly. And I did not have his permission to do it. I had to come back to him. He said, if you want to do it, you're going to have to come back to me again. But the litigation's ongoing. You'll presumably get a shot at it, right? Oh, absolutely. We will be taking it. And finally, the representation that there's a survey. You have everything there is. It is not even a report of the survey. It is a PowerPoint by somebody who maybe read it. And that's it. That's third, fourth-hand hearsay. That's great for a law school exam. Can you jump all those hearsay hoops? So I think the biggest thing here is they want to treat false advertising somehow like it's a bastard son of the Lanham Act. And I think it's entitled even more to an injunction than a regular trademark case because the public interest against not being lied to is to be protected. And that's why that presumption comes in, because that's the only way the public can be protected. Thank you. Thank you. Thank you, counsel, for your excellent briefs and argument. We're going to take the case under advisement.